**Wolfgang VON DUNSER,
Plaintiff–Appellee,**

v.

**Arnold Y. ARONOFF,
Defendant–Appellant.**

**No. 89–1364.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 8, 1989.

Decided Oct. 5, 1990.

Barry M. Rosenbaum (argued) and Joel H. Serlin, Goldstein, Serlin, Eserow, Rosen-

baum & Baker, Southfield, Mich., for plaintiff-appellee.

Abraham Singer (argued), Pepper, Hamilton & Scheetz, Detroit, Mich., for defendant-appellant.

Before MILBURN and BOGGS, Circuit Judges, and ENGEL, Senior Circuit Judge.

BOGGS, Circuit Judge.

Wolfgang Von Dunser sued Arnold Y. Aronoff in July 1984 to enforce payment on a contract arising out of Von Dunser's role in finding a parcel of land in Florida for Aronoff to buy. The stated basis for federal jurisdiction was the diversity and alienage statute. 28 U.S.C. § 1332. The district court rendered a decision for Von Dunser on November 30, 1988, awarding him $877,170. It later reduced the award to $727,170. Aronoff then brought this appeal.

Von Dunser claims to be dual citizen. Austrian-born, he is a naturalized American. His most recent American domicile was in Florida, where he maintained a residence, voted, and conducted business. In 1976, Von Dunser removed to Europe and has resided in various places there ever since. At the time of his action against Aronoff, Von Dunser lived in Switzerland. Aronoff admitted in his answer to the complaint that he was a resident of Michigan.

Von Dunser's complaint did not specify whether federal jurisdiction was based on his Austrian citizenship (alienage) or on his citizenship in Florida (diversity). Aronoff did not challenge the existence of federal jurisdiction and the district court did not address it. It is therefore impossible to say at this point whether the district court based its jurisdiction on any precise theory.

On appeal, for the first time, Aronoff challenges the existence of federal subject-matter jurisdiction. First, he argues that Von Dunser, because he has lived several years in Europe, is not a citizen of Florida (or any other state), and therefore he cannot sue or be sued in federal court on the basis of diversity jurisdiction. *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, ——, 109 S.Ct. 2218, 2221, 104 L.Ed.2d 893 (1989); *Sadat v. Mertes*, 615 F.2d 1176, 1180 (7th Cir.1980). Further, because Von Dunser is a citizen of the United States, there can be no alienage jurisdiction under 28 U.S.C. § 1332(a)(2), notwithstanding his Austrian citizenship. *Id.* at 1185–86. On the other hand, Aronoff contends that even if Von Dunser is still a citizen of Florida, he too is actually a Florida citizen, having moved his principal residence there from Michigan prior to Von Dunser's filing suit.

■ In his brief, Von Dunser takes the position that federal jurisdiction exists on the basis of diversity of state citizenship. He argues that at the time he brought his action he was still a citizen of Florida, never having established a different domicile during his years in Europe. State citizenship for the purpose of the diversity requirement is equated with domicile. *Sadat*, 615 F.2d at 1180; *Rodriguez–Diaz v. Sierra–Martinez*, 853 F.2d 1027 (1st Cir. 1988); *Valedon Martinez v. Hospital Presbiteriano de la Comunidad*, 806 F.2d 1128 (1st Cir.1986). A person's previous domicile is not lost until a new one is acquired. *Kaiser v. Loomis*, 391 F.2d 1007 (6th Cir. 1968); *Lew v. Moss*, 797 F.2d 747 (9th Cir. 1986); *Maple Island Farm, Inc. v. Bitterling*, 196 F.2d 55 (8th Cir.1952). Establishment of a new domicile is determined by two factors: residence in the new domicile, and the intention to remain there. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, ——, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989); 13 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3612.

The parties have presented this court with assertions of fact that support their respective positions. Aronoff contends that Von Dunser has established a residence in Europe and shown an intention to remain there. Von Dunser claims he went to Europe because of his mother's illness, that he considered the relocation to be temporary, that he always intended to return to Florida, and that he frequently returns to Florida for business and to visit his son in school. Aronoff maintains, in turn, that

by 1983 he had filed a Declaration of Domicile in Florida, established his principal residence in Naples, and paid Florida income taxes.

None of these arguments was raised below. Consequently no finder of fact has examined any evidence that would tend to support or refute them. This court, sitting on the appeal of the district court's ruling on the merits, is not in a position to determine the truth of the parties' assertions regarding their domiciliary status.

The question arises whether we must resolve the jurisdictional dispute and whether a factual determination is necessary to the resolution of this case. We reluctantly conclude that it is. The diversity and alienage statute, 28 U.S.C. § 1332(a), states that the federal district courts shall have original jurisdiction of all civil actions where the amount of controversy exceeds $50,000 [1] and is between:

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state. . . .

*Ibid.*

The dual citizen has been a troublesome creature for the courts in construing the diversity and alienage statute. In general, American law abhors the status of dual citizenship. Naturalization as a United States citizen includes by law the renunciation of allegiance to foreign powers. 8 U.S.C. § 1448. Presumably, Von Dunser made such a renunciation upon his naturalization. That renunciation can sometimes form the basis for a court's rejection of the claim of dual citizenship. *Raphael v. Hertzberg,* 470 F.Supp. 984, 986 (C.D.Cal. 1979), *appeal dismissed,* 636 F.2d 1227 (9th Cir.1980). Nevertheless, dual citizenship exists, largely as a result of conflicts in nations' ideas of citizenship. Following the rule that each nation is permitted to determine who its citizens are,[2] American law reluctantly recognizes the existence of dual citizenship in certain cases, even where the party has renounced allegiance to foreign powers. *Sadat v. Mertes,* 615 F.2d at 1183.

At first blush, Von Dunser's Austrian citizenship (which Aronoff does not challenge) would seem to bestow alienage jurisdiction in a dispute between him and a citizen of one of the United States, despite his also being an American citizen. That was the position taken in *Aguirre v. Nagel,* 270 F.Supp. 535 (E.D.Mich.1967), where the court held that alienage jurisdiction existed in a case between a Michigan plaintiff with dual United States and Mexican citizenship and another Michigan citizen.

The finding of jurisdiction in *Aguirre,* however, has been criticized on two grounds. The first is that since the plaintiff and the defendant were citizens of the same state, there was little chance of bias and the finding was inconsistent with the doctrine of complete diversity. 13 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3621. If Aronoff and Von Dunser are not both citizens of Florida, that criticism is not relevant to this case.

The second criticism of *Aguirre* is that finding alienage jurisdiction in a case where a dual citizen is a party is inconsistent with the policy underlying the creation of alienage jurisdiction. That policy is described in *Blair Holdings Corporation v. Rubinstein,* 133 F.Supp. 496 (S.D.N.Y. 1955) as an attempt to avoid the danger of giving offense to foreign nations by denying their nationals a federal forum in suits against United States citizens. In *Sadat v. Mertes,* 615 F.2d 1176 (7th Cir.1980), the court concluded that the danger did not exist where the alien was also an American citizen. The plaintiff in *Sadat* was born Egyptian and was a naturalized American. He was domiciled in Egypt at the time of the action. He claimed dual citizenship and presented some evidence to that effect. The court accepted the plaintiff's dual citizenship, but rejected his claim that it entitled him to alienage jurisdiction. The court reasoned that the policy underlying alienage jurisdiction did not apply where the

---

**1.** At the time of the initiation of this case, the jurisdictional amount was $10,000.

**2.** *Murarka v. Bachrack Bros., Inc.,* 215 F.2d 547 (2d Cir.1954); *Risk v. Kingdom of Norway,* 707 F.Supp. 1159 (N.D.Cal.1989).

alien party was also an American citizen, because there was little risk that the foreign nation would be affronted by a requirement that prevented one of its citizens who was also an American from having a federal forum. It criticized *Aguirre* for failing to consider the policies supporting alienage jurisdiction.[3]

The same policy considerations underlying alienage jurisdiction were cited to deny federal jurisdiction in *Raphael v. Hertzberg*, 470 F.Supp. 984 (C.D.Cal.1979), *appeal dismissed*, 636 F.2d 1227 (9th Cir. 1980). The plaintiff in *Raphael* claimed to be a dual citizen of the United States and the United Kingdom and wanted to sue a citizen of his own state. After initially finding that the plaintiff was not a United Kingdom citizen, the court stated that even if he were a dual citizen, there was no jurisdiction on the basis of alienage because there was no danger of bias in suing a citizen of one's own state in state court and there was no danger of causing an affront to the United Kingdom by denying the plaintiff access to a federal court. *Raphael* criticized *Aguirre* on various grounds, including that *Aguirre* would give preferential treatment to naturalized citizens over native-born citizens in access to federal courts.

We could distinguish *Raphael* and *Aguirre* and satisfy the concerns about complete diversity by noting that Von Dunser, unlike the plaintiffs in those cases, is not a citizen of the same state as the opposing party. However, even that would require a factual finding that Von Dunser and Aronoff are not both citizens of Florida, as each claims to be. Moreover, to hold that alienage jurisdiction exists in this case, we would have to reject the holding in *Sadat* that the absence of the major policy reason underlying alienage jurisdiction is a sufficient reason to deny alienage jurisdiction where one party is a dual citizen, regardless of the language of the statute.

On the basis of the uncertain factual situation before us, we decline to pursue that approach at this time.

Nor do we have sufficient information to hold that jurisdiction exists on the basis of diversity of state citizenship, on the theory that Von Dunser is still a citizen of Florida. Such a holding would require a more detailed account of Von Dunser's activities in Europe since leaving Florida in 1976 than is contained in his appellate brief. It would also require further factual development of Aronoff's claim that he too is a citizen of Florida.

▪ Because Aronoff raised the issue of jurisdiction only after judgment had been entered in the district court, the question also arises whether this court must address the issue at all. It appears that we must. The general practice among federal courts has been to permit any party to challenge (or for the court to question *sua sponte*) the existence of subject-matter jurisdiction at any time in the proceedings. The language of Fed.R.Civ.P. 12(h)(3) suggests that courts have a positive duty to undertake the jurisdictional inquiry: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court *shall* dismiss the action." (Emphasis added.)

A case that runs contrary to the general practice is *Di Frischia v. New York Central Railroad*, 279 F.2d 141 (3d Cir.1960), where the court declined to address the jurisdiction question raised by one of the parties on appeal. In *Di Frischia*, the party raising the question of jurisdiction on appeal had first raised the issue in its answer, then had dropped it and stipulated to certain facts indicating that jurisdiction existed, then had raised the issue again on appeal. The court held that the party was estopped from arguing lack of jurisdiction on appeal. *Di Frischia* has since been criticized or distinguished as limited to its

---

**3.** *Sadat* suggested a possible exception to its holding where the dual citizen's "dominant nationality" was foreign. However, that approach would also require factual findings lacking in this case. *Sadat* determined dominant nationality by considering the plaintiff's naturalization and his renunciation of foreign allegiances. In *Soghanalian v. Soghanalian*, 693 F.Supp. 1091 (S.D.Fla.1988), the court looked at the party's home ownership and his returning of a foreign passport to determine his dominant nationality.

facts. *See, e.g., Rubin v. Buckman,* 727 F.2d 71, 72 (3d Cir.1984); *Eisler v. Stritzler,* 535 F.2d 148, 151–52 (1st Cir.1976).

The court in *Sadat* distinguished *Di Frischia* on its facts but also questioned whether the estoppel theory would ever be an appropriate ground to avoid the question of jurisdiction in view of *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) (jurisdiction otherwise lacking cannot be conferred by consent, collusion, laches, waiver, or estoppel). In *Sadat,* the court rejected the plaintiff's estoppel argument even though the defendant's challenge to jurisdiction came only after the statute of limitations on the action had run, leading to a very harsh result for the plaintiff.

The Supreme Court, as well as more recent decisions from other circuits, has taken the position that challenges to jurisdiction must be addressed by the court. *Gilbert v. David,* 235 U.S. 561, 35 S.Ct. 164, 59 L.Ed. 360 (1914) (motion to dismiss for lack of diversity must be addressed, although seven years after suit was instituted); *Morris v. Gilmer,* 129 U.S. 315, 9 S.Ct. 289, 32 L.Ed. 690 (1889) (court must consider defendant's post-answer affidavit challenging diversity, even though answer did not mention lack of jurisdiction and record affirmatively showed diversity); *Eisler v. Stritzler,* 535 F.2d 148 (1st Cir.1976) (although it offends fairness and judicial economy to allow defendant who best knows the circumstances of his citizenship to raise issue of jurisdiction only after judgment, the law is well established that the district court must address any challenge to subject matter jurisdiction); *Basso v. Utah Power and Light Co.,* 495 F.2d 906 (10th Cir.1974) (despite seemingly unfair result, to decline to address jurisdiction issue would be to allow the parties, through artful pleading, to expand the jurisdiction of the federal courts beyond the Congressional grant, citing *American Fire and Casualty v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951)); *Joyce v. United States,* 474 F.2d 215 (3rd Cir.1973) (although regrettable that government did not raise issue of lack of FECA jurisdiction more promptly, where there is no jurisdic-tion over subject matter, court has no discretion to ignore that lack of jurisdiction).

Von Dunser's complaint states: (1) he is a citizen of the United States and Austria, (2) he currently resides in Switzerland, (3) Aronoff resides in Michigan, and (4) jurisdiction exists under 28 U.S.C. § 1332. In his answer, Aronoff is agnostic as to (1) and (2); admits that he resides in Michigan; and states that (4) is a legal conclusion to which no answer is required.

■ Although, as a general rule, federal courts will accept at face value a complaint's factual allegations regarding the existence of jurisdiction and not require production of specific evidence unless jurisdiction is challenged, Von Dunser's complaint does not, by itself, necessarily allege sufficient facts to establish federal jurisdiction. It asserts dual citizenship, but under *Sadat v. Mertes,* dual citizenship does not create alienage jurisdiction. Furthermore, the complaint fails to establish diversity of state citizenship, since it does not specify that Von Dunser is a citizen of a particular state. In fact, the statement that he resides in Switzerland seems to suggest that he is not a citizen of any state.

Aronoff did not admit jurisdiction in his answer, so this is not a *Di Frischia* situation (i.e., one in which the party later changes his position on the existence of jurisdiction). He did admit that he resides in Michigan. This might form the basis for an estoppel against Aronoff's claim on appeal that he was really a Florida citizen in 1984, but even that would require going beyond what most courts have been willing to do; if Aronoff and Von Dunser were indeed Florida citizens at the time of the complaint, then invoking an estoppel (however well deserved) against Aronoff's argument to the contrary would expand the jurisdiction of the court beyond the Congressional grant.

■ The district court made no factual findings regarding jurisdiction, although it did state that Von Dunser was an American citizen and that Aronoff was a resident of Michigan. This is understandable, as the issue was not contested by the parties.

However, because the federal courts are courts of limited jurisdiction, it would be helpful if district courts made findings of fact on the predicates of subject-matter jurisdiction even where they appear unnecessary.

 Because of the fluid nature of the alternatives in this case, the situation on remand is ripe for inconsistent arguments and pleadings by the parties. To ease the corresponding burden on the district court in sorting out the parties' positions and to facilitate its determination of the relevant facts, we instruct the district court on remand first to determine the state citizenship of Aronoff, and only then to determine the specifics of Von Dunser's citizenship. In all cases, the relevant determination is the citizenship of the parties as of July 3, 1984, the date of the complaint.[4]

Accordingly, the case is REMANDED to the district court for findings of fact on the issue of subject-matter jurisdiction.

---

**4.** We note that this is a case in which the district court may wish to note the possibility of Rule 11 sanctions for pleadings filed without a "belief formed after reasonable inquiry" that the plead-ing "is well grounded in fact...." It could be, depending on the court's ultimate findings, that this rule would apply to one or another of a party's contradictory pleadings.