NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0460n.06

No. 09-3240

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jul 28, 2010**
LEONARD GREEN, Clerk

BETHANY FARMER, )
)
    Plaintiff-Appellant, )
)
v. ) On Appeal from the United States
) District Court for the Southern
ROGER FISHER; SAM ROBERTSON; KAREN ) District of Ohio
CHRISTIAN; DEBRA ROTHSTEIN, )
)
    Defendants-Appellees. )

Before:       BOGGS, ROGERS, and COOK, Circuit Judges

PER CURIAM. Bethany Farmer appeals the order of the district court denying her motion

to vacate its earlier judgment dismissing with prejudice Farmer's complaint, which sought punitive

and compensatory damages from the appellees for various torts allegedly committed during Farmer's

childhood. Farmer's complaint alleged that, during the course of a bitter custody dispute between

her parents in the State of Ohio's court system in 1995 and earlier, the defendants–appellees

breached various professional duties owed to Farmer by virtue of their testimony and arguments to

the Ohio courts, which Farmer characterized as designed to ensure that she would be placed in the

sole custody of her allegedly abusive and neglectful father. According to the complaint, Roger

Fisher was a clinical psychologist with whom Farmer had a doctor–patient relationship; Sam

Robertson and Karen Christian were psychiatrists with whom Farmer had doctor–patient

relationships; and Debra Rothstein was an attorney with whom Farmer had an attorney–client relationship.

Though the record in this case is somewhat unclear as to the disposition of the custody action in question, it is evident that at some point Farmer left the United States in the company of her mother and remained abroad at least up until the time she filed suit against the defendants, a period of several years. Her brief on appeal discloses that "[f]rom the age of eight to the present, [Farmer] has resided in Europe as a result of her mother's decision to remove her to escape claimed sexual abuse at the hands of [her] biological father." In a motion seeking appointed counsel in the district court below, Farmer alleged that, "[d]esperate to avoid returning to the possession of a man she feared and hated, complainant, along with her mother, was forced to take drastic action by moving out of the country." Farmer appears to have remained in Europe indefinitely; though in her complaint she alleges that she "is an eighteen (18) year old female citizen of the United States of America," the complaint—and the rest of the record—contains no representation that she is a citizen of any particular state, and indeed the complaint appears to identify her residence as "various European locations."

Acting pro se, Farmer filed her complaint in the district court on March 13, 2006, alleging that each of the defendants–appellees were citizens of Ohio and that "[t]his court has jurisdiction over this action pursuant to 28 U.S.C. 1332, as there is complete diversity of citizenship between the parties and the damages exceed \$75,000 exclusive of costs and interest." The defendants timely answered.

Over the next several months, however, Farmer missed several scheduled depositions, conferences, and deadlines relevant to her lawsuit. She failed to attend her own deposition on July 21, September 1, and September 14, 2006, nor did she attend a pretrial scheduling conference on July 27, 2006 or a telephone status conference on September 14, 2006. On September 15, 2006, the defendants filed a motion to dismiss Farmer's complaint for lack of prosecution and failure to appear; Farmer filed no response to that motion, and on May 17, 2007 the magistrate recommended that it be granted. Farmer again filed no objections to the magistrate's recommendation, and the district court adopted it and dismissed the complaint with prejudice on August 2, 2007.

Nearly a full year later, on July 29, 2008, Farmer filed a motion to vacate the district court's judgment, citing Ohio Civil Rule 60(B). In her motion, Farmer argued that, due to her location in Europe, she had a difficult time getting timely notice of court business and had difficulties finding counsel. She further claimed to have eventually retained an attorney in March 2007, but that the attorney had misled her into believing that he was qualified to appear on her behalf when he in fact was not, and that ultimately his lack of diligence resulted in her failure to file any response to the defendants' motion to dismiss. The district court denied Farmer's motion to vacate on January 30, 2009, and this timely appeal followed.

On appeal, Farmer argues that the district court erred in construing her motion to vacate as having been made exclusively pursuant to Federal Rule of Civil Procedure 60(b)(1), which permits relief from judgment on the grounds of "excusable neglect," and contends that her motion was, in fact, also made pursuant to Federal Rule of Civil Procedure 60(b)(6), which permits such relief for "any other reason that justifies relief." Ultimately, she argues that her geographic distance from the

court proceedings, the failings of her allegedly faithless attorney, and the fact that she has been diagnosed with Asperger's Syndrome justify vacatur of the district court's dismissal of her complaint. We will not reach the merits of these arguments, however, because the district court apparently lacked jurisdiction to decide this case.

The presence or absence of jurisdiction to hear a case is the "first and fundamental question presented by every case brought to the federal courts." *Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000) (internal citation and quotation marks omitted). Accordingly, "federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Ky., Inc. v. Creation Ministries Intern., Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009). Thus even in cases where the issue of jurisdiction was not raised below—such as this one—we must evaluate whether a federal court is empowered to decide the questions raised by the parties. *See Mitchell v. Maurer*, 293 U.S. 237, 244 (1934) ("An appellate federal court must satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.").

That evaluation is shaped by the fact that "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As a result, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Ibid.* (internal citations omitted).

Farmer has failed to meet that burden. Most prominently, her complaint does not comply with the prima facie requirement that a plaintiff seeking diversity jurisdiction set forth the factual

basis on which that jurisdiction is predicated. Federal Rule of Civil Procedure 8(a) mandates that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support . . . ." In her complaint, Farmer avers merely that she is a "citizen of the United States of America," that the four named defendants are each citizens of Ohio, and that federal jurisdiction pursuant to 28 U.S.C. § 1332 is therefore proper "as there is complete diversity of citizenship between the parties and the damages exceed $75,000 exclusive of costs and interest."

Yet the language of 28 U.S.C. § 1332(a)(1) authorizes a federal court to take diversity jurisdiction over a civil action only if the action is between "citizens of different States." Farmer does not allege in her complaint that she is a citizen of any state, and thus fails to overcome the presumption against federal subject matter jurisdiction by pleading an adequate basis for diversity jurisdiction.

We recognize, of course, that "the Federal Rules of Civil Procedure 'do not extend or limit federal jurisdiction, but they implement the exercise of existing jurisdiction, which has been conferred by statute.'" *Post v. Bradshaw*, 422 F.3d 419, 423–24 (6th Cir. 2005) (quoting *Edwards v. E.I. Du Pont de Nemours & Co.*, 183 F.2d 165, 168 (5th Cir. 1950)). But our decision is no mere exaltation of form over substance: it is well-settled that subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires that the parties be *both* citizens of the United States *and* domiciliaries of individual states. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) ("In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State."); *see also Von Dunser v. Aronoff*,

915 F.2d 1071, 1072 (6th Cir. 1990) ("State citizenship for the purpose of the diversity requirement is equated with domicile."). "Domicile," in turn,

> is, of course, a concept widely used in both federal and state courts for jurisdiction and conflict-of-laws purposes, and its meaning is generally uncontroverted. "Domicile" is not necessarily synonymous with "residence," and one can reside in one place but be domiciled in another. For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there. On acquires a "domicile of origin" at birth, and that domicile continues until a new one (a "domicile of choice") is acquired. Since most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents.

*Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (citations omitted).

Diversity for the purpose of subject matter jurisdiction is determined as of the time of the filing of a lawsuit. *Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 540 (6th Cir. 2006). Farmer's complaint and other record documents indicate that she had lived in Europe for at least ten years before filing her complaint. Because for most of that time she was a minor and thus "legally incapable of forming the requisite intent to establish a domicile," her domicile up until her eighteenth birthday was that of her custodial parent. *See Toledo Traction Co. v. Cameron*, 137 F. 48, 56–57 (6th Cir. 1905) (child of divorced parents took his mother's domicile because she was the custodial parent).

Nothing in the record indicates which of her parents had legal custody of Farmer, but there is likewise no material in the record indicating that she was eligible to seek federal jurisdiction over her claims at the time she filed her complaint. Farmer's mother evidently remained in Europe with Farmer after they left the United States, likely establishing a domicile abroad that would have likewise applied to Farmer herself under *Holyfield*. The only affirmative evidence in the record of

the domiciliary status of either of Farmer's parents prior to Farmer's departure includes (1) the bare fact that their custody litigation took place in the Hamilton County, Ohio Juvenile Court and (2) that Farmer's complaint avers that she suffered ongoing abuse as the result of the defendants' actions "extending to years after [her] departure from her home in Warren County."[1]  Thus all available evidence indicates that, even if Farmer had somehow retained her previous state citizenship while living in Europe, she would have been a citizen of Ohio and therefore unable to sue the defendants in diversity.  In either scenario—domiciled abroad or domiciled in Ohio—Farmer would have had to establish a domicile in a state other than Ohio at some point in the interval after her eighteenth birthday and before the filing of her complaint in order to successfully invoke 28 U.S.C. § 1332. Because there is no evidence even hinting that this occurred, or that Farmer was otherwise a citizen of any state, her failure to comply with Rule 8(a) requires dismissal of her complaint.  *See Von Dunser*, 915 F.2d at 1075 ("Although, as a general rule, federal courts will accept at face value a complaint's factual allegations regarding the existence of jurisdiction and not require production of specific evidence unless jurisdiction is challenged, Von Dunser's complaint does not, by itself, necessarily allege sufficient facts to establish federal jurisdiction.  . . . [T]he complaint fails to establish diversity of state citizenship, since it does not specify that Von Dunser is a citizen of a particular state.  In fact, the statement that he resides in Switzerland seems to suggest that he is not a citizen of any state.").

---

[1]Warren County, Ohio adjoins Hamilton County.

"Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869). Accordingly, we **REMAND** this case to the district court with instructions that it be dismissed for lack of jurisdiction.