NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0402n.06

No. 13-3379

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| FRITZ DAIRY FARM, LLC; MARK R. FRITZ; MICHELLE E. FRITZ, | ) ) ) | **FILED**<br>Jun 03, 2014<br>DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) ) |  |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| CHESAPEAKE EXPLORATION, LLC; RICHARD OWEN; KENYON ENERGY, LLC, | ) ) ) | NORTHERN DISTRICT OF OHIO |
| Defendants-Appellees. | ) ) ) |  |

Before:  MOORE and KETHLEDGE, Circuit Judges; TARNOW, District Judge.[*]

KETHLEDGE, Circuit Judge.  In this case, the district court enforced a settlement agreement that Chesapeake Exploration entered into with Fritz Dairy Farm and its owners, Mark and Michelle Fritz.  The Fritzes argue that the district court lacked jurisdiction over the case, or alternatively, that there was no valid agreement to enforce.  We reject their arguments and affirm.

In 2010, the Fritzes entered into two oil and gas leases with Kenyon Energy.  A contractor named Richard Owen negotiated and prepared the leases for Kenyon, who later assigned its rights to Chesapeake.  As recorded, each lease ran for a primary term of five years

---

[*]  The Honorable Arthur J. Tarnow, Senior Judge for the Eastern District of Michigan, sitting by designation.

and granted Chesapeake the right to renew the lease for another five. The Fritzes say that Owen fraudulently altered the leases to add the right to renew.

The Fritzes therefore sued Owen, Kenyon, and Chesapeake to that effect in state court. Chesapeake removed the case to federal court. At a status conference before the district court, the parties began negotiating a potential settlement. During negotiations, the court allowed the Fritzes to leave so that they could tend to the cows on their farm. The Fritzes' lawyer, Stephen Leiby, continued negotiating in their absence.

After a few hours, the parties reached an agreement and read the terms—amendments to the leases, monetary compensation for the Fritzes, and dismissal of the lawsuit—into the record. The court asked Leiby if he had spoken to the Fritzes. Leiby replied, "I conferred with my clients. They've agreed with the settlement." The court asked whether the Fritzes agreed with "all the terms" of the agreement. Leiby replied, "[t]hey do, Your Honor." The court then asked whether any part of the agreement was to be confidential. Neither party had discussed the issue, but both agreed to keep confidential the amount of the Fritzes' monetary compensation. The court gave the parties 30 days to draw up the relevant documents.

Over the next few weeks, the parties exchanged drafts of those documents. Then Leiby emailed Chesapeake to say "I do not have any commitment from my clients regarding the terms of the settlement agreement or the lease amendment and ratification. At this point my hands are tied." The next day—and unbeknownst to Leiby—the Fritzes sent a long letter to the district court, which told the story of the leases and the litigation so far. As for the settlement agreement, the Fritzes explained that "[o]nce we returned home, collected our senses and viewed the proposed documentation submitted to us by Chesapeake we came to the only conclusion possible that we were again being taken advantaged up [sic]." In closing, the Fritzes said,

"we . . . do not agree to settle with Mr. Owen, Chesapeake and Kenyon Energy." Thereafter, Chesapeake moved to enforce the settlement agreement per the terms read into the record. The district court held an evidentiary hearing and granted the motion. This appeal followed.

The Fritzes first argue that the district court lacked jurisdiction over the case. Chesapeake removed the case to federal court on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1441. Diversity jurisdiction lies when the amount in controversy exceeds $75,000 and the suit is between "citizens of different States[.]" 28 U.S.C. § 1332. Diversity of citizenship must be complete—"no plaintiff can be the citizen of the same State as any defendant." *Exact Software N. Am., Inc. v. DeMoisey*, 718 F.3d 535, 541 (6th Cir. 2013). Here, the Fritzes (and their farm) are undisputedly Ohio citizens. They assert that Richard Owen was also an Ohio citizen, and thus scuttled complete diversity here. The district court, in contrast, found that Owen was an Oklahoma citizen. We review that finding for clear error. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012).

For purposes of diversity jurisdiction, citizenship means domicile: the state where a party both physically resides and intends to remain. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990). Richard Owen swore to the district court that he was "a permanent resident" of Oklahoma and listed his address there. That would seem to resolve his citizenship. But the Fritzes reply that Owen submitted an application to become a notary in Ohio, in which he stated he was a "legal resident" of the state and listed an Ohio address to boot. The problem is that domicile "is not necessarily synonymous with residence[.]" *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). The Fritzes offer no evidence that Owen ever intended to remain in Ohio. To the contrary, Owen explained that his Ohio address was that of a hotel in

which he "temporarily stay[ed]" while "engaging in temporary business in Ohio." The district court did not clearly err in finding that Owen was an Oklahoma citizen.

The Fritzes next argue that there was no valid agreement to enforce because Leiby exceeded his settlement authority. We review the district court's finding to the contrary for clear error. *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000). A lawyer "acting within the scope of his actual authority, expressly or impliedly conferred" can bind a client. *Damon's Mo., Inc. v. Davis*, 590 N.E.2d 254, 257 (Ohio 1992). The Fritzes assert that they denied Leiby authority to enter into two specific terms of the agreement. The first term ditched each lease's right to renew, but extended the primary term from five years to seven and a half. The second term required confidentiality as to the monetary compensation the Fritzes received. The district court found that the Fritzes granted Leiby full and complete settlement authority, in which case he was authorized to enter into the two terms regardless of whether the Fritzes later disagreed with them.

We see no clear error in that finding. Leiby told the district court that he had "full and complete settlement authority[.]" Based upon its firsthand observations, the court found Leiby more credible than the Fritzes. The court's own recollection of the status conference was that Leiby had full and complete settlement authority. And in their own letter to the court, the Fritzes said that their objections to the two terms emerged not prior to or during negotiations—when they might have limited Leiby's authority—but after, "[o]nce we returned home" and "collected our senses[.]" Because Leiby had authority to settle, the Fritzes are bound by the agreement he made, even if they are unhappy with the results.

The district court's judgment is affirmed.