**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 16a0600n.06**

**No. 16-1170**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LOUBNA NAJI; AMAL N. AOUM, Individually and as Next Friend of Nazih Barjas, Mohamad Barjas, and Zack Barjas, | ) ) ) ) | **FILED**<br>Nov 09, 2016<br>DEBORAH S. HUNT, Clerk |
|     Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| ANDREW R. LINCOLN, | ) ) | |
|     Defendant-Appellee. | ) | |

BEFORE:     BOGGS, SUHRHEINRICH, and McKEAGUE, Circuit Judges.

BOGGS, Circuit Judge.  Plaintiffs, injured in an automobile crash, sued in Michigan state court the driver of the car that struck them.  Some forty-one days after he was served, the defendant filed a response in state court.  Twenty-two days later (sixty-three days after having been served), the defendant removed to federal court, asserting diversity jurisdiction.  After several discovery disputes and warnings from the district court about dilatory tactics, plaintiffs' counsel failed to attend a mandatory pretrial conference.  The judge dismissed the case with prejudice, and plaintiffs appealed, now claiming that removal was improper.  Because Plaintiffs have not appealed the merits of the dismissal below, and have thus forfeited any such argument, we examine only whether the district court's exercise of jurisdiction was proper.  *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006).  We hold that the district court below was correct to retain the case and affirm its dismissal of the plaintiffs' claim on the merits.

I.  Background

On August 4, 2012, Amal Aoum was driving in Dearborn, Michigan, with her passengers Loubna Naji, Mohamad Barjas, Nazih Barjas, and Zack Barjas.  The car crossed Warren Avenue and was struck by Andrew Lincoln ("Lincoln" or "Defendant") as he drove under the influence of alcohol.  On October 2, 2012, Naji and Aoum, individually and on behalf of Mohamad, Nazih, and Zack Barjas (collectively "Plaintiffs"), brought suit in Michigan state court against Lincoln for injuries allegedly sustained during the collision.  The complaint stated that both the Plaintiffs and Lincoln were residents of Michigan.  Further, it made claims of "severe bodily injuries which were painful, disabling, and necessitated medical care; . . . [s]hock and emotional damage; . . . [a]ggravation of preexisting conditions and/or reactivation of dormant conditions; . . . [i]nability to attend to usual affairs and render services as formerly, as well as inability to enjoy the normal pursuit of life, as before;" and "[o]ther[ injuries] to be determined," and sought recompense for Plaintiffs' injuries as well as pain and suffering "in whatever amount Plaintiffs are found to be entitled, together with interest, costs, and attorney fees."

Lincoln was served with the complaint on December 20, 2012 and, after an extension, filed an answer on January 30, 2013.  According to Lincoln, he first met with his attorney on January 21, 2013, and informed him that he was in fact an Indiana resident and citizen and had been at the time of the accident.  Thirty-one days after this meeting (and a full sixty-three days after Plaintiffs' Complaint reached him), he filed a Notice of Removal on February 21, 2013, removing the case to the United States District Court for the Eastern District of Michigan.  In this notice, Lincoln stated that he "was and is a resident of the State of Indiana," that the amount in controversy "might exceed $75,000," and that the district court had jurisdiction under 28 U.S.C. § 1332.

On March 29, 2013, the district court entered an order requiring Defendant to show cause why the case should not be remanded to state court for lack of subject-matter jurisdiction and the tardiness of the removal. In response, Defendant provided an affidavit asserting that he was a domiciliary of Indiana and argued that the amount in controversy exceeded $75,000 because of the nature of the injuries alleged. With regard to timeliness, Defendant asserted: "Excluding the day of the event triggering the period (January 21, 2013), . . . the defendant's notice of removal was filed within 30 days after learning that the case was removable . . . ." The district court was satisfied that it could exercise subject-matter jurisdiction and proceeded to consider the case.

While the case proceeded toward trial, Plaintiffs' counsel was admonished by the court for "dilatory conduct," sanctioned twice for failure to turn over discovery materials, and warned that further failure to comply with the court's orders could result in dismissal. By the date of the scheduled pretrial conference, Plaintiffs' counsel had neither paid the sanctions levied against them nor submitted their expert-witness disclosures. But counsel's failure to attend the mandatory pretrial conference was the bale that broke the camel's back. The district court dismissed the Plaintiffs' claims with prejudice on the basis of Plaintiffs' "long and clear record of contumacious conduct" and "failure to comply with this Court's Orders" and entered judgment in favor of Defendant. Plaintiffs timely appealed.

## II. Analysis

### A. Subject-Matter Jurisdiction.

It is a federal court's unflagging duty to verify that it has jurisdiction over the case before it, lest it pronounce its opinion in contravention of Article III or the bounds imposed by Congress. *See Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990). Although the parties do not appear to dispute the existence of diversity jurisdiction, the district court was

right to probe the issue sua sponte. And even though that court was satisfied that jurisdiction existed, we must arrive at the same conclusion independently.

Diversity jurisdiction requires two elements: complete diversity of the parties and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332 (2012). The diversity of the parties is determined on the basis of their state citizenship—that is to say their domiciles. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990). Domicile is something more than residency, but where domicile is unchallenged, residency may serve as prima facie evidence of a party's domicile where the record reveals no contrary indications. *Fort Knox Transit v. Humphrey*, 151 F.2d 602, 602–03 (6th Cir. 1945) (per curiam). And the burden of establishing diversity falls on the party seeking federal jurisdiction—here, Defendant. *See Her Majesty the Queen in Right of the Province of Ont. v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989).

Where a defendant removes a case to federal court, he must make a "short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a) (2012), which must contain "only a plausible allegation" of diversity of citizenship and amount in controversy. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). Because Lincoln's notice of removal merely stated that he was a resident of Indiana and Plaintiffs' complaint stated that he was a resident of Michigan, the district court correctly requested further information. But Lincoln's affidavit asserting that his domicile was in Indiana, along with corroborating evidence (driver's license, tax returns, and voting registration), was sufficient to establish presumptively his Indiana domicile. *See, e.g.*, 13E Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3612 (3d ed. 2009). Similarly, evidence of Plaintiffs' Michigan residence and licenses demonstrates their Michigan domicile, as does their own assertion of Michigan citizenship.

The question of amount in controversy, although slightly less straightforward, also demonstrates that we have jurisdiction. In the usual course of proceedings, the sum claimed by a plaintiff, if made in good faith, is the amount in controversy. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). Where a plaintiff claims an unspecified amount in damages, a defendant seeking removal under diversity jurisdiction must demonstrate by a preponderance of the evidence that the amount in controversy exceeds the statutory threshold. *See* 28 U.S.C. § 1446(c)(2)(B) (2012); *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Here, Plaintiffs sought "whatever amount Plaintiffs are found to be entitled, together with interest, costs, and attorney fees."[1] Defendant's Notice of Removal merely alleged that the amount in controversy "might exceed $75,000," which is insufficient to show an adequate amount in controversy. *See, e.g.*, *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006), *abrogated on other grounds by Hertz*, 559 U.S. 77 ("While [a defendant] need not show 'to a legal certainty that the amount in controversy met the federal requirement,' [he] must do more 'than show[] a mere possibility that the jurisdictional amount is satisfied.'" (quoting *Gafford*, 997 F.2d at 155 & n.2 (final alteration in original) (footnote omitted))).

When pressed by the district court, Defendant alleged that if each of the plaintiffs received only $15,000 in damages, the jurisdictional amount would be met. This argument is unavailing. A single plaintiff may aggregate his separate claims against a single defendant, but "[t]he traditional judicial interpretation . . . has been from the beginning that the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Snyder v. Harris*, 394 U.S. 332, 335 (1969). Defendant also argued that,

---

[1] Michigan's rules of civil procedure preclude plaintiffs from stating a specific sum where the claim is not for a "sum certain or a sum that can by computation be made certain" and is over $25,000. Mich. Ct. R. 2.111(B)(2).

as three of the plaintiffs are minor children, damages for impaired earnings capacity would exceed the $75,000 threshold over the course of their lives. But given his previous combination logic, it is unclear whether Defendant's allegation is that any one plaintiff's damages will exceed $75,000 or that the three together will. Finally, Defendant contends that the injuries alleged are sufficiently significant to be greater than $75,000. Other than briefly describing the injuries and their alleged severity, there is no evidence why such injuries are likely to exceed $75,000 in damages. Again, because Defendant's argument seems premised upon the idea that aggregation is permissible, no individual plaintiff's injuries are examined in detail to demonstrate that they will be over $75,000.

Plaintiffs appear to have agreed that the amount in controversy is in excess of $75,000, having attested with Defendant that the injuries "exceed the jurisdictional amount of $75,000." Agreement between the parties cannot confer subject-matter jurisdiction, however. Examining the record independently, it appears the amount in controversy of at least one plaintiff, Naji, exceeds $75,000. *See* 28 U.S.C. § 2108 (2012). It must at least exceed $25,000, because Plaintiffs stated in their complaint that the amount in controversy was greater than $25,000 and Michigan does not permit aggregation of separate claims to establish a jurisdictional minimum. *See Boyd v. Nelson Credit Ctrs., Inc.*, 348 N.W.2d 25, 27 (Mich. Ct. App. 1984); 1 Jack K. Levin, *Michigan Pleading and Practice* § 2:26 (2d ed.) (updated Aug. 2016). Naji indicated that she was disabled from her $475-per-week job and required household-care services (cooking, cleaning, shopping, etc.) at a rate of twenty dollars per day and attendant-care services (assistance dressing, bathing, eating, etc.) at a rate of thirty to sixty dollars per day. Assuming that the disability never ceased from the date of the accident and the need for household-care and attendant services continued (because Plaintiffs assert that the damages are permanent), the

damages at issue are at a minimum over $177,000 for Naji's work and service charges alone without considering medical expenses or pain and suffering.[2] Although the jurisdiction of the federal court is examined at the time of removal, *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000), future compensations that are claimed in the complaint are included in the total amount in controversy, *cf. Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 377 (6th Cir. 2007) (including statutorily authorized attorneys' fees in amount in controversy). As a result, this court has subject-matter jurisdiction over the case before us.

### B.  Removal.

Although the requirements of 28 U.S.C. § 1332 are not waivable, we have noted that procedural defects, like a failure to remove a case to federal court within thirty days, are not jurisdictional and thus objections to removal based thereupon can be forfeited by parties. *See, e.g.*, 28 U.S.C. § 1447(c) (2012) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."); *Page v. City of Southfield*, 45 F.3d 128, 134 (6th Cir. 1995) ("[D]efects in removal procedure . . . are waived unless raised in a plaintiff's motion within thirty days after removal . . . ."). Plaintiffs raise the question of timeliness for the first time on appeal and have therefore forfeited the argument. *See Jolivette v. Husted*, 694 F.3d 760, 770 (6th Cir. 2012) ("As a rule, we will not review issues if they are raised for the first time on appeal."); *Grudzinski v. Staren*, 87 F. App'x 508, 512 (6th Cir. 2004) ("[Plaintiff] raises the issue of

---

[2] These damages were calculated as of September 21, 2016. ($475 per week in lost pay and $350 per week in household and attendant care services multiplied by the 215 weeks between August 4, 2012, and September 21, 2016.) If the date that the answers to the interrogatories were signed (March 7, 2014) is used instead, the amount is still over $68,000 before medical expenses and pain and suffering. Given Naji's assertion that the pain she suffered was an eight on a ten-point scale daily for months (if not through today), it would still be clear that the amount in controversy exceeds $75,000. *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010) ("[C]ourts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements. This approach is consistent with those of other circuits."); *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001) (determining that a "fair reading" of a complaint with unspecified damages demonstrated that the amount in controversy was above $75,000).

untimely removal from state court for the first time on appeal, and we therefore do not consider it.").

Plaintiffs argue that the district court's terse statement that it was satisfied "that the removal was timely" serves to revive their forfeited claim. But regardless of whether the district court had found the removal timely or untimely, the result would have been no different. The court's statement came nearly four months after the removal, and by that time Plaintiffs had forfeited their ability to file a motion to remand based on procedural defect. And the district court itself was without power to remand sua sponte to the state court on that basis. *See Page*, 45 F.3d at 134 ("[Section] 1447(c) prohibits a district court from remanding *sua sponte* for a procedural defect."). Thus, because the plaintiffs forfeited their chance to argue the procedural defect, the case was properly before the district court. Accordingly, we need not address when the case became removable.

## III. Conclusion

Regardless of any delay by Defendant in removing the case, Plaintiffs were 1136 days late in raising the issue and brought up their timeliness argument only after the case had been dismissed on the merits after years in the district court. Because 28 U.S.C. § 1447 requires that motions to remand be made within thirty days of the notice of removal and the district court could not remand sua sponte for procedural defects, there was no error below. We **AFFIRM** the district court's judgment of dismissal of the case with prejudice.